## Hansen's Estate.

Argued January 19, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Earl F. Reed,* with him *Clyde A. Armstrong,* of *Thorp, Bostwick, Reed & Armstrong,* and *William C. O'Neil,* for appellants.

*O. K. Eaton,* with him *Frank R. Bolte,* for appellee.

OPINION BY MR. JUSTICE STERN, January 29, 1942:

Testatrix, who died on January 15, 1939, leaving an estate of over two and a half million dollars, bequeathed to her executors the sum of $250,000 "either in cash or in securities, at the election of my executors," in trust to pay one-half of the net income to her daughter, Lynda H. Gellatly, for the support, maintenance and education of the grandson of testatrix, John Hansen Gellatly, during his minority, the other half to be accumulated and paid to him upon his attaining the age of twenty-one; thereafter to pay the entire net income to him during his life, with the right on his part, upon reaching the age of twenty-eight, to withdraw from the trust fund $50,000; at his death the principal to go to his testamentary appointees, or, in default of appointment, to his heirs at law.

On June 1, 1939, the executors transferred to themselves as trustees under this trust certain shares of stock of American Rolling Mill Company preferred, General

14

American Transportation Company, and Pullman, Inc., which they charged to the trust at inventory value— $162,562.50. The guardian ad litem of the grandson filed exceptions to their first and partial accounts as executors and as trustees on the ground that these stocks, all of which were listed on the exchange, had a market value of only $125,450 at the time of transfer, and that the executors should therefore turn over to the trust, out of the remaining assets of the estate, additional cash or securities to the extent of $37,112.50 in order to make up the amount charged, and should further turn over to the trust cash or securities necessary to complete the full sum of $250,000. These exceptions were sustained by the court, and the trustees and testatrix's daughter appeal.

Appellants rely upon a paragraph of the will which is as follows: "In the distribution of my estate, the Trustees under the several trusts herein created are authorized to accept in kind and hold as investments under the said trusts for such period as they may deem advisable any securities, properties or assets whatsoever owned by me at the time of my decease at such values as my said Trustees may consider fair and equitable." The executors say they took advantage of the Internal Revenue Code, 53 Stat. 120, §811(j), 26 U. S. C. A. §811(j), which gives an option to determine values, for purposes of the estate tax, as of a date one year after the decedent's death, but if any property be distributed within the year it is to be included at its value as of the time of such distribution. In order to make the tax as low as possible they set up the trust when there was "a sharp dip in the market due to conditions abroad," and thus saved a considerable sum, the benefit of which was shared by the trust, but in valuing the stocks for the purpose of making up the $250,000 they disregarded the market value at the time of transfer and adopted instead the considerably higher inventory value. They claim, in so doing, to have "considered it on a long-range viewpoint, over a period of years, and looked back at the history of

the various stocks over a long period of years and their earnings, the values behind the security, the prices at which they had sold, all elements of value."

The testatrix having given the trustees authority to accept securities for the trust at such values as they might consider fair and equitable, their discretion in that regard, if honestly and reasonably exercised, cannot be controlled by the court. But, no matter how broad the discretion granted, equity will interfere to prevent its exercise in a manner that would frustrate the true intent and purpose of the testatrix: *Williams's Appeal,* 73 Pa. 249, 284, 285; *Severns's Estate (No. 2),* 211 Pa. 68, 71, 60 A. 494, 495. Undoubtedly the trustees acted with the best of intentions, but, notwithstanding the reasons advanced to justify their action, their adoption of the inventory values existing at the time of the death of the testatrix as the values four and a half months later, regardless of the large intervening decrease in the market prices, was an arbitrary and unreasonable exercise of their discretionary power that did violence to the paramount intention of the testatrix. When the trust was set up, if they had transferred to it $125,450 in cash, there could immediately have been purchased for that sum all of the securities placed in the trust at a valuation of $162,562.50, and, whatever may have been the likelihood of a subsequent enhancement, it was certainly the testatrix's intention that the trust should have a then present, actual value, not merely a theoretical, potential value, of $250,000. What she bequeathed was "the sum of $250,-000", although she provided that it might be made up of either cash or securities. We agree with the court below that the trustees, notwithstanding the discretion given them to determine "fair and equitable" values, could not, in exercising the trust confided to them by the testatrix, gravely impair the interest of the minor beneficiary, who was the object of her concern and bounty, by transferring to the trust stocks at a valuation grossly in excess of the prices for which they could, at the very time, have been bought on the New York stock exchange.

The executors have not yet paid the estate tax and therefore urge, in accordance with the Act of July 2, 1937, P. L. 2762, that they should not be compelled at this time to turn over to the trust securities sufficient to bring its total value to $250,000, but only to $175,000 which they calculate is the approximate maximum to which the trust will be entitled after bearing its proportionate share of the tax. As, however, three years have elapsed since the death of the testatrix, and the tax is said to be still in the course of adjustment, there would seem to be no reason why the trust should not now be set up in full so that the grandson may receive the benefit of the income therefrom. The act referred to contains a provision that, if the apportionment of taxes has not been determined, the executor shall not be required to distribute the estate unless adequate security is furnished by the distributees. Therefore the executors may, if they desire, take a bond from themselves as trustees, and, when the tax is ultimately determined, they will be entitled to reimbursement, out of principal, to the extent to which the trust is found to be liable.

Orders affirmed; costs to be paid out of decedent's estate.